O

# United States District Court
# Central District of California

| | |
|---|---|
| PHYLLIS ANDREWS,<br><br>Plaintiff,<br><br>v.<br><br>ALL GREEN CARPET & FLOOR CLEANING SERVICE; TRAD TRAD; ZEHAVA TOLEDANO; EYTAN TOLEDANO; KRISTINE DE GUZMAN; and RON HAVER,<br><br>Defendants. | Case No. 5:14-cv-00159-ODW(Ex)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO QUASH SERVICE OF SUMMONS [43]; AND GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS [42]** |

## I. INTRODUCTION

Plaintiff Phyllis Andrews ("Andrews") brought suit against Defendants Eytan Toledano and Zehava Toledano (collectively "Defendants") for violations of the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227(c)(5)(B). Andrews alleges that Defendants made numerous unsolicited telephone calls to Andrews's phone, which consisted of pre-recorded messages advertising for All Green Carpet & Floor Cleaning Service. Defendants subsequently failed to plead or otherwise defend this action, leading to default being entered and Andrews moving for default

judgment. Following Andrews's application for default judgment, Defendants moved to quash service of summons, claiming that service was improper under Federal Rules of Civil Procedure ("FRCP") 4(e) and thus default judgment should not be granted. For the reasons discussed below, the Court **DENIES** Defendant's Motion to Quash (ECF No. 43), and **GRANTS** Andrew's Motion for Default Judgment (ECF No. 42).[1]

## II. FACTUAL BACKGROUND

Andrews registered her phone number with the National Do Not Call Registry in 2007, making it illegal for businesses to use her telephone number to make unsolicited calls for business purposes. (ECF No. 42, Appl. for Default J. ["ADJ"] 3; ADJ Attach. 1 ["Andrews Decl."], Ex. A.) Starting in April 2013, Andrews received a total of eleven unsolicited and automated calls from three different numbers promoting "All Green Carpet & Floor Cleaning Service" with the same automated message. (ADJ 1–2; ECF No. 26, Second Am. Compl. ["SAC"] ¶¶ 16–19.) The phone calls were received by Andrews on April 25; July 21, 22, 26; September 17, 21, 26, 28; and October 2, 9, 10, in the year 2013. (ADJ 3–4.) These numbers belonged to Defendants and represent a fraction of the approximately 355 telephone numbers purchased by Defendants from Manchester Services, Inc. for the purpose of making such calls. (ADJ 3; ECF No. 45, Sapir Decl., Ex. A, D.) Andrews repeatedly told the caller not to make any future calls, a plea that was ignored, and filed complaints to the Federal Trade Commission. (ADJ 4; Andrews Decl. ¶ 5; Andrews Decl., Ex. D.)

Andrews filed her initial Complaint on January 27, 2014 alleging that Defendants violated the TCPA's provision against repeated unsolicited business calls. 47 U.S.C. § 227(c)(5)(B) (ECF No. 1 ¶¶ 1, 24–32.) After receiving no answer or pleadings from Defendants—despite their counsel being in contact with Andrews's counsel (ECF No. 43, Mot. to Quash Service ["MQS"] 5; MQS, Ex. G–Q) —Andrews moved to enter default against Defendants on March 25, 2015. (ECF No. 36.) The

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

clerk entered default and Andrews applied for default judgment on April 1, 2015, seeking the maximum statutorily allowable damages under the TCPA, $1,500 for each unsolicited call made by or on behalf of Defendants, totaling $27,000.[2]

On April 6, 2015, Defendants moved to quash service of summons, claiming that service was conducted improperly. (MQS 5–6.) Specifically, Defendants claimed that service was improper because the address at which the summons was delivered was not the home or dwelling of Defendants as indicated on the proof of service forms. (*Id.* at 4–5.) The proof of service of summons submitted by Andrews against Defendants shows that service was delivered by substituted service to 23222 Friar St. Woodland Hills, California. (ECF Nos. 34, 35.) A timely opposition and reply were filed. (ECF Nos. 44, 46.) Both Andrews's Application for Default Judgment and Defendants' Motion to Quash Service are now before the Court for consideration.

### III. LEGAL STANDARD

FRCP 55(b) authorizes a district court to grant default judgment after the Clerk enters default under Rule 55(a). Local Rule 55-1 requires that the movant submit a declaration establishing (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) that the defaulting party was properly served with notice.

A district court has discretion whether to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Upon default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

---

[2] Although $27,000 is the total sought by Andrews, that figure was calculated incorrectly and if done correctly, as discussed below, would be $16,500.

In exercising its discretion, a court must consider several factors, including: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## IV. DISCUSSION

### A. Defendants' Motion to Quash Service of Summons

Defendants argue for a literal and uncompromising interpretation of both the Federal and State rules of civil procedure, but the Court is unconvinced that the mere act of a process server checking the wrong box on the service forms denied Defendants proper and actual notice of these proceedings.

FRCP 4(e) delineates the process through which an individual within a judicial district of the United States may be served. Rule 4(e)(1) further dictates that the State in which the proceedings will take place can utilize its own laws governing service of process. California Code of Civil Procedure ("CCCP") section 415.20(b) states that leaving a copy of the summons and complaint at a person's "dwelling house, usual place of abode, usual place of business, or usual mailing address" constitutes proper substituted service when personal service cannot reasonably be achieved.

The Ninth Circuit has held that when a defendant moves to claim that default judgment is improper due to improper service of process but delays doing so until after entry of default judgment, the defendant bears the burden of convincing the court that service did not occur. *S.E.C. v. Internet Solutions for Bus. Inc.,* 509 F.3d 1161, 1163 (9th Cir. 2007). The Ninth Circuit also held that a signed return of service provides prima facie evidence that valid service occurred, a presumption that can only be overcome by "strong and convincing evidence." *Id.* Additionally, self-serving declarations by defendants or interested parties are generally insufficient to rebut that

presumption of valid service. *E.g., craigslist, Inc. v. Hubert*, 278 F.R.D. 510, 513–14 (N.D. Cal. 2011); *Holmes v. Plath*, No. 1:01-CV-06359-AWI, 2011 WL 864301 (E.D. Cal. 2011).

Andrews's process server visited 23222 Friar St. three times, as it was believed to be Defendants home address due to it being the address claimed by Defendants in their contract with Manchester Services, Inc., Zehava's W-9 tax form, and where checks made out to Defendants were regularly sent and subsequently cashed. (Sapir Decl., Ex. A–C; ECF Nos. 34, 35.) On the third visit, Defendant Ron Haver told the server that Defendants were his roommates and was left with the service papers. (ECF Nos. 34, 35.) This information, contained in the sworn statements of Andrews's process server, creates the presumption of valid service. Although Haver claims this version of events is inaccurate and that he refused to accept the service papers, his self-serving declaration fails to outweigh the sworn affidavit of the process server and provide the "strong and convincing" evidence needed to overcome the presumption of truth surrounding the server's statements. *See craigslist, Inc.,* 278 F.R.D., at 514 (holding service recipient's declaration was insufficient to rebut plaintiff's signed proof of service stating service was completed and the recipient claimed the defendant was his roommate).

*1. Technical Defects Effecting Validity of Service of Summons*

Defendants argue that since the proof of service forms were marked as being delivered to their home, it does not matter if the service address could qualify as any other valid service location. (ECF No. 46, Reply Re: Mot. To Quash ["Reply Re: MQS"] 2.) Putting forth this defense, Defendants concede that 23222 Friar St. is their mailing address. (*Id.* at 2–3.) Essentially, Defendants are arguing that every 'i' must be dotted and every 't' be crossed for service to be deemed valid; anything less is improper.

This stance, however, is not the stance adopted by courts faced with similar technicalities regarding service. Rather, courts have routinely held that FRCP 4(e)

1  and section 415.20 be construed "liberally" in an effort to avoid "mere technicalities"
2  allowing a defendant with actual notice of the actions against them to avoid judgment.
3  *Pasadena Medi-Ctr. Associates v. Superior Court*, 9 Cal. 3d 773, 778 (1973); *see,*
4  *e.g., United Food & Commercial Workers Union, Locals 197, et al. v. Alpha Beta Co.*,
5  736 F.2d 1371, 1382 (9th Cir. 1984) (holding "[FRCP] Rule 4 is a flexible rule that
6  should be liberally construed so long as a party receives sufficient notice of the
7  complaint."); *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994)
8  (stating "[t]echnical defects in a summons do not justify dismissal unless a party is
9  able to demonstrate actual prejudice.")

10  The technicality at issue here is that Andrews's process server relied on Haver's
11  statements that Defendants were his roommates when the server checked the "home"
12  box on the proof of service forms. (ECF Nos. 34, 35.) It is clear from the facts that
13  Defendants received checks, mail, and even listed 23222 Friar St. as their address on
14  business contracts and personal tax forms. (Sapir Decl., Ex. A–C.) Furthermore,
15  Defendants admit that 23222 Friar St. is their mailing address. (Reply Re: MQS 2–3.)
16  Thus, because 23222 Friar St. is Defendants' mailing address, substituted service
17  conducted at that location is proper. *See* CCCP § 415.20(b) (stating that substituted
18  service may be completed at a person's "usual mailing address").

19  *2. Defendants' Notice of Complaint and Suit Against Them*

20  Defendants had notice regarding the present suit. Though Haver states that he
21  refused to accept service, soon after the summons had been delivered, Defendants
22  contacted their counsel and began communicating with Andrews's counsel. (MQS 5.)
23  Defendants repeatedly asserted that service was improper and refused to engage in any
24  discussions with Andrews regarding the case or potential settlement. (*Id.* Ex. G–Q.)
25  Though Defendants quoted and relied upon CCCP section 415.20(b) in their
26  arguments, conspicuously editing out the acceptability of a mailing address as a
27  service location, that reliance was misguided.
28  *Pasadena Medi-Ctr.* simply requires that the defendant(s) have notice of the

suit for the technical defects of service discussed above to be excusable. 9 Cal. 3d at 778. In that regard, the evidence of engaging in continuing discussions with opposing counsel on direction from Defendants, the signing of declarations, and attempting to badger Andrews into dropping the case shows there can be no doubt Defendants were on notice regarding this action. Furthermore, the parties were in contact for nearly two and a half months regarding this suit before Andrews filed an entry for default judgment—an action that Defendants were repeatedly told was coming. Thus, the Court does not see any plausible way in which Defendants lacked notice of this suit.

Accordingly, since the technical fault at issue in this case is simply checking the wrong box due to being misinformed of the nature of Defendants' ties to 23222 Friar St., and because Defendants had notice of the suit at hand, the Court finds that Andrews's service was proper. Therefore, the Court **DENIES** the Defendants' Motion to Quash Service of Summons.

**B.     Andrews's Motion for Default Judgment**

As discussed above, the Court finds that service of the summons and complaint upon Defendants was proper, and all other requirements of Local Rule 55-1 have been met and are not in controversy.

*1. Eitel* Factors

The Court finds that the *Eitel* factors weigh in favor of default judgment. The Court will discuss each factor in turn.

a.   Andrews Would Suffer Prejudice

If default judgment were denied, Andrews would be left without a means to recover the damages she incurred as a result of Defendants' illegal conduct. Defendants had sufficient time to make their positions known and properly engage in this suit; instead they tried to avoid liability by relying on technicalities. Therefore, this factor weighs in favor of Andrews.

b.   Andrews Has Brought Meritorious Claims

Andrews's likelihood of success on the merits of her claims is exceptionally

high. Andrews's in-depth records show that she received numerous calls from numbers purchased and owned by Defendants over the course of several months, despite her number being registered on the National Do-Not-Call Registry since 2007. (ADJ 1–2.) This is proved through (1) photographic evidence of Andrews's Caller-ID, records of calls placed to Andrews; (2) Andrews's status as being registered with the Do-Not-Call Registry; and (3) the numbers in question being present on the list of numbers owned by Defendants. (Andrews Decl., Ex. A–C; Sapir Decl., Ex. D.)

In order to establish a cause of action under the TCPA, Andrews need only prove that she received more than one call within a 12-month period from or on behalf of the same entity in violation of TCPA regulations. 47 U.S.C. § 227(c)(5)(B). Within those regulations, 47 C.F.R. § 64.1200(c)(2) states that it is prohibited for any person to initiate any telephone solicitation to residential telephone numbers registered with the Do-Not-Call Registry.

Andrews also argues that Defendants violated 47 C.F.R. §§ 64.1200(d)(2), (3), (6) which set forth the procedures that must be met in order for any entity to initiate calls to residential phone subscribers. These include numerous safeguards to prevent the exact circumstances experienced by Andrews at the hands of Defendants such as: training the person(s) making the calls in utilization of the Do-Not-Call list; recording and honoring of Do-Not-Call requests by the recipient of calls; and maintaining a record of those callers who made Do-Not-Call requests. 47 C.F.R. §§ 64.1200(d)(2)–(6).

Because Defendants have failed to introduce any evidence to the contrary, Andrews will be able to establish that each of the eleven calls she received were conducted by, or on behalf, of Defendants. Due to Andrews's registration of her phone number with the National Do-Not-Call Registry, these calls are automatically violations of the TCPA after the first such call. (Andrews Decl., Ex. A.) To establish that Defendants are the culpable party, Andrews introduced evidence showing that Defendants had purchased several hundred phone numbers and that the numbers

harassing her were among those Defendants owned and operated. (Sapir Decl., Ex. A, D.)

The only avenue available to rule against Andrews would be if Defendants put forth a defense stating that they had adequate safeguards and procedures to prevent these calls from happening. However, due to the volume of calls placed by, or on behalf of, Defendants to Andrews, either Defendants had blatantly inadequate safeguards in place to ensure compliance with the TCPA or they simply did not care. Regardless, Defendants failed to raise any such defense and the Court shall not do so on their behalf. Accordingly, this factor weighs in favor of entry of default judgment on these claims.

### c. Andrews's Complaint Was Sufficiently Plead

Andrews's complaint pleads a cause of action against Defendants for violations of 47 U.S.C. § 227(c)(5)(B) of the TCPA. As explained in greater detail above, the complaint and the allegations within were sufficiently pleaded and form the basis for a claim on which Andrews may recover. Thus, this favor weighs in favor of entry of default judgment.

### d. The Amount at Stake Weighs in Favor of Default Judgment

Andrews requests a total of $27,000 in damages, $500 for each call as set forth as the maximum penalty in 47 U.S.C. § 227(c)(5)(B) and then utilizing the statutes treble damages clause to increase that figure to $1,500 per call if Defendants willfully or knowingly committed violations under § 227(c)(5). It is unclear, however, where Andrews arrived at the figure of $27,000 given that only eleven calls were reported and included in her motion for default judgment. (ADJ 4.) Discarding the erroneous figure, the correct amount of damages to be requested by Andrews under the offered formula would be $16,500.

To determine whether the damages sought are proper for the scope of default judgment, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp.

2d 1172, 1176–77 (C.D. Cal. 2002). Additionally, "[t]he court has wide discretion in determining the amount of damages to be awarded within statutory limits." *Elektra Entm't Grp., Inc. v. Bryant*, No. CV 03-6381GAF(JTLX), 2004 WL 783123 at *6 (C.D. Cal. Feb. 13, 2004).

Given that the evidence before the Court clearly shows that these calls were made to Andrews by, or on behalf, of Defendants and that Defendants blatantly failed to both adhere to Andrews's request to no longer be called and to follow the procedural safeguards called for under 47 C.F.R. § 64.1200(d), it is reasonable to award treble damages in the amount of $16,500 on the belief that these acts were committed with intent and disregard for the law. *See Trindade v. Reach Media Grp., LLC*, No. 5:12-CV-04758-PSG, 2014 WL 3572132, at *5 (N.D. Cal. July 18, 2014) (holding that awarding treble damages for TCPA violations when granting default judgment was reasonable because the record reflected that the defendant had knowledge of text messages being sent on its behalf). Accordingly, as the amount at stake is within statutory limits, the Court finds this factor weighs in favor of default judgment.

e. There is No Possibility of Dispute as to Material Facts

As illustrated in the discussion of the second *Eitel* factor, Andrews sufficiently alleged that Defendants violated the TCPA by placing numerous unsolicited business calls to her home phone that was registered with the Do-Not-Call Registry. It is well established that "[u]pon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *PepsiCo*, 238 F.Supp.2d at 1177. Therefore, because Defendants never responded to the complaint and introduced no evidence to counter Andrews's claims, "no factual disputes exist that would preclude the entry of default judgment." *Vogel v. Rite Aid Corp*, 992 F. Supp. 2d 998, 1013 (C.D. Cal. 2014).

f. There is Little Possibility Default was Due to Excusable Neglect

As discussed at length above, Andrews effectuated proper service under FRCP

4(e)(1) and CCCP section 415.20(b) by substituted service to Defendants' mailing address. (ECF Nos. 34, 35.) Defendants' failure to thoroughly read and research section 415.20(b), even after being cited the relevant passage by Andrews's counsel, is not excusable. Even if it were, these actions do not comport with the meaning of neglect. The strategy employed by Defendants and their counsel was equivalent to a legal game of 'chicken,' hoping to scare off Andrews with baseless threats of sanctions in order to make this action disappear. As a result, the Court finds this factor weighs in favor of entry of default judgment.

### g. Policy for Deciding on the Merits Weighs in Favor of Granting Default Judgment

In *Eitel*, the court maintained that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, where, as is the case here, the defendant fails to answer the plaintiff's complaint, "a decision on the merits [is] impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177 ("Under Fed.R.Civ.P. 55(a) [sic], termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action"). Furthermore, "when a defendant . . . acknowledges that he has been sued, but seek[s] to [set aside judgment] on the ground that the service, though practically effective, was technically defective . . . [it is] the defendant who seeks to prevent an adjudication on the merits." *Carol Gilbert, Inc. v. Haller*, 179 Cal. App. 4th 852, 865 (Cal. Ct. App. 2009). Accordingly, the Court finds that this factor does not preclude entry of default judgment.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' Motion to Quash Service of Summons (ECF No. 43) and **GRANTS** Andrews's Motion for Default Judgment (ECF No. 42).

The Court **AWARDS damages** against Zehava Toledano and Eytan Toledano in the amount of **$16,500** for violation of the Telephone Consumer Protection Act under § 227(c)(5)(B). A separate judgment will issue.

**IT IS SO ORDERED.**

June 11, 2015

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**